BIRD MACHINE COMPANY v. UNITED STATES    (No. 5128–9)*

United States Court of Customs and Patent Appeals, January 23, 1964

*Richard J. Walsh, Francis E. Silva, Jr.,* (*Warner Stackpole Stetson & Bradlee,* of counsel) for appellant.

*John W. Douglas,* Assistant Attorney General, *Andrew P. Vance,* Chief, Customs Section (*Daniel I. Auster,* trial attorney, of counsel) for the United States.

*C.A.D. 835

[Oral argument November 6, 1963, by Mr. Silva, Jr., and Mr. Auster]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr.,
Associate Judges

RICH, Judge, delivered the opinion of the court:

These appeals are from two judgments of the United States Customs Court, Second Division (C.D. 2362 and 2363) overruling the importer's protest to the classification of various paper-pulp making equipment. The facts being closely related, the cases were consolidated below. The court rendered two opinions, one judge dissenting in each.

Understanding the issues requires brief discussion of the paper-pulp making industry. We shall, therefore, first set out background germane to both cases.

The equipment involved is used in the highly integrated process of making paper from wood. Two exhibits in evidence are flow sheets showing a typical "pulp flow diagram" wherein logs are processed through a series of refining operations to make pulp for final rendering into paper. The exhibits show that logs are barked and washed, chipped, chemically digested, screened to eliminate knots, dirt, etc., and finally washed, the pulp product being sent to the paper mill. Each operation is performed by devices which, considered together, make up a typical pulp mill.

The cases at bar relate to two such devices. No. 5128 concerns a Skardal stock preparator (hereinafter Skardal) and parts thereof. The Skardal is described by stipulation of the parties as follows:

4. * * * It is an integrated mechanical complex lacking only motive power from an outside source in order to perform the function * * * [of] refining * * * paper slurry from virgin stock, waste paper, etc., by means of a grinding or grating action.

5. Generally speaking, the machine consists of a series of three perforated cylinders against each of which the stock is ground or beaten by three perforated shoes. The other parts are the base, housing, inlet and exhaust ports, shaft, spiders to which the shoes are connected, sheave for belt for transmission of power from an outside source, and miscellaneous smaller parts.

6. Essentially it is a machine which refines in three stages, the design being characterized by the fact that the taper drill holes in the shoes and cylinders and also the angle between the shoe and cylinder surfaces are smaller in the second stage than in the first stage and even smaller in the third stage than in the second. Moreover, depending upon the stock to be ground and the end result desired, the cylinders and shoes may be replaced by others with larger or smaller perforations and the working angle between the shoes and the cylinder may be increased or decreased by the substitution of spiders of different dimensions.

The Skardal parts involved include cylinders, shoes, spiders, shafts, spacers, bearing housing caps, lockwashers and locknuts.[1]

No. 5129 concerns screen plates for a Bird Jonsson Screen, the latter being described by stipulation as follows:

2. The Bird Jonsson screen is a compact self-contained unit consisting of an open trough or vat in which the perforated screen plates form the base or floor. The stock flows into one end of the screen and is subjected to intense but precisely controlled vibration while traveling over the scientifically shaped and perforated screening area. The purpose of the screen is to separate wanted fibres from unwanted dirt, knots, chips, knuckles, cockle burrs, wet strength paper, cellophane, paper clips, rubber bands, etc. This result is accomplished by the stock containing the good, clean fibres passing through the screen plate openings while the other materials are carried to the discharge end of the screen, impelled by the vibrating action of the screening surface. The screen does not change the size or shape or otherwise affect the fibres or other materials. It merely screens from the stock all material other than usable fibres.

The collector classified the Skardal and parts thereof as "other stock-treating parts for pulp and paper machinery" pursuant to paragraph 356 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, which reads (emphasis ours):

Roll bars, bed plates, and *all other stock-treating parts for pulp and paper machinery* (not including paper or pulp mill knives). * * *

Screen plates for the Bird Jonsson Screen were also so classified.

Appellant protested alleging the following classification to be correct:

(1) In No. 5128, the Skardal should be classified as "machines for making paper of paper pulp" pursuant to paragraph 372 of the Tariff Act of 1930 as modified by T.D. 54108, which reads as follows (emphasis ours):

Machines, finished or unfinished, not specially provided for:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Combination candy cutting and wrapping machines; *machines for making paper or paper pulp;* machines for packaging pipe tobacco; machines for wrapping candy; and machines for wrapping cigarette packages. * * *

Of the parts for the Skardal enumerated supra, appellant agrees that the cylinders and shoes, as well as the spiders included with cylinders and shoes in the stator-rotor set, are properly classified under paragraph 356. However, appellant contends that all other parts, including spiders *not* in the stator-rotor set, should be classified as

---

[1] Cylinders and shoes are elements which coact to grind and grate wood chunks in the stock. Spiders are connected to and support the shoes. Shafts, spacers, bearing housing caps, lockwashers and locknuts are all ancillary elements of the Skardal which function as their names imply.

Stators and rotors, referred to infra, consist of shoes, cylinders *and spiders.* Except for the stator and rotor set, which incorporates the three aforementioned elements, all other elements are treated individually for purposes of classification in this case.

"Parts, not specially provided for" under paragraph 372, supra, which reads:

> Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part. * * *

(2) In No. 5129, appellant says screen plates for the Bird Jonsson Screen should be classified under paragraph 372 as "Parts, not specially provided for, wholly or in chief value of metal" since the Bird Jonsson Screen per se, so says appellant, is a "machine for making paper or paper pulp" and the screen plate is not specifically a "stock-treating" part thereof.

We shall now consider the Customs Court's opinions separately.

### No. 5128—Skardal Stock Preparator and Parts

The majority of the Customs Court sustained the collector, stating that the Skardal, albeit a "machine," is in the tariff sense a "stock-treating" part "for paper and pulp machinery." The majority opinion states (all emphasis ours):

> It is the considered opinion of the court that the word "parts" in the phrase "stock treating parts for paper and pulp machinery" is employed in the tariff sense of the word that a "part" of an article is an integral, constituent, or component part thereof, something necessary to the completion of and without which the completed machinery could not function. *United States* v. *Willoughby Camera Stores, Inc.* (1933), 21 C.C.P.A. (Customs) 322, T.D. 46851.

> The language in paragraph 356, with which we are concerned, is readily susceptible to the meaning that it embraces not only stock treating elements or parts *but as well machines* which operate together or in sequence in the process of treating stock for pulp and paper machinery.

> An examination of the tariff structure leads to the conclusion that Congress used the term "machines" and "machinery" with different connotations. Paragraph 372 is a striking example. Not only do we find several "machines" specifically enumerated, but the same paragraph also enumerates printing machinery, bookbinding machinery, paper-box machinery, and textile machinery. Paragraph 1643 of the free list provides for certain machines and also for shoe machinery. It would seem to be a matter of common knowledge that shoe machinery, printing machinery, textile machinery, and pulp and paper machinery are of a kind which are large and cumbersome and are composed of a variety of machines and accessories properly integrated to make up what is indicated by the term "machinery."

> * * * * * * *

> It is those *integrated machines* and accessories which are undoubtedly contemplated by the provision for stock treating *parts* for pulp and paper machinery.

> * * * * * * *

> * * * The mere fact that the Skardal stock preparator may be a *machine in itself* would seem to be of no consequence, in view of the broad meaning we have ascribed to the word "parts" in the provision for stock treating parts for pulp and paper machinery in paragraph 356.

As to the *parts* of the Skardal, the majority stated:

> The court is of the opinion that the word "parts," as used in the phrase "stock-treating parts for pulp and paper machinery" in paragraph 356 includes not

only the Skardal stock preparator but also the other accessories in controversy, there being no proof to the contrary.

The dissenting judge, after considering the legislative history of paragraph 372, concluded (all emphasis ours):

The foregoing statement [from the legislative history] lends support to the proof adduced by plaintiff, if indeed it be beyond the purview of this court to judicially notice the fact, that the manufacture of paper pulp is the combined contribution of a large number and considerable variety of individual machines. Some prepare the initial materials, others process and treat stock, still others convert pulp into finished paper. Consequently, when the provision for machines for making paper and pulp was written into the trade agreement, it must have been its purpose to embrace *more than just a single machine* for making paper pulp and a single machine for making paper. If then, the intent of the negotiators of this provision was to include several different kinds of machines which, together, produce paper pulp, the major premise of the defendant's position is seemingly undermined. Chippers, grinders, refiners, and beaters are stock treating elements which are parts of the pulp making process. Yet, *they appear to have been the very machines* for making paper and pulp accorded separate tariff status by the new language and, hence, are not the stock treating parts provided for in paragraph 356.

On the other hand, if machines which treat stock in the course of the preparation of paper pulp were, prior to the adoption of the Swedish Trade Agreement [T.D. 47785, infra], more specifically provided for in paragraph 356, as stock treating parts for pulp and paper machinery, it was beyond the province of the negotiators to make provision for them elsewhere. * * *

It remains to be determined whether *complete machines* performing *independent* steps in the manufacture of paper pulp fall within the scope of the provision for stock treating parts for pulp and paper machinery.

The legislative history referred to above is in the "Digest of Trade Data with Respect to Products on which Concessions were Granted by the United States in the United States-Swedish Trade Agreement," a document published by the Tariff Commission in July, 1935, following modification of paragraph 372 in 1935.[2] 68 Treas. Dec. 19, T.D. 47785. Pertinent parts which comment on the modified statute state at page 162:

The above classification [in paragraph 372] is intended to include machines used (1) in the preparation of wood, rags, and other fibrous material for conversion into pulp, (2) in conversion of the prepared material into pulp, (3) in *refining* or packaging such pulp *preliminary* to its use in making paper, and (4) in the manufacture of such pulp into paper. The classification does not include sawmill machines such as slashers, log conveyors, etc., and other machines which though used in pulp mills have a more general use in the lumber and wood-using industries. [Emphasis ours.]

Both the majority and dissenting opinions cite and analyze four cases construing paragraph 356, to which we shall refer later.

We are of the opinion that the dissenting judge was correct in his analysis of the statute and the case law. As we view the undisputed

---

[2] A similar analysis of this provision is found in the 1948 Summaries of Tariff Information, Vol. 3, part 4, p. 154.

facts, the majority opinion is not consistent with the above-cited legislative history or the facts of the pulp and paper industry. No one disputes appellant's assertion, noted in the majority opinion, that there is no "one 'machine' for making paper pulp or paper in the sense of a single machine designed or sold to perform all the functions necessary for the conversion of virgin or waste stock into paper pulp or paper." In fact, the majority opinion cites such statement approvingly, and then states, "It is those integrated *machines* and accessories [i.e., the *combination* of different *machines* variously arranged and employed to make pulp] which are undoubtedly contemplated by the provision for stock treating *parts* for pulp and paper machinery." (Emphasis ours.) We cannot agree with the conclusion in that quotation as to what was contemplated. If the Skardal is not a "* * * [machine] for making * * * paper pulp" within the meaning of paragraph 372, what is? No *one* machine makes paper pulp. Congress presumably knew this; the legislative history so indicates. Yet the provision in paragraph 372 exists along with paragraph 356. Congress presumably intended *something* to be a "* * * [machine] for making * * * paper pulp." We think the Skardal is such a machine.

We have independently reviewed pertinent portions of the textbook "Modern Pulp and Paper Making," by John B. Calkin, introduced into evidence below by appellant.[3] Two chapters thereof are germane: "Mechanical Pulp—The Groundwood Mill"; and "Stock Preparation." Each fully substantiates the allegation that no *one* machine makes paper pulp. The latter chapter is particularly pertinent, showing photographs of what we consider to be "machines" in the paragraph 372 sense: jordan fiber cutters, hydrapulpers, stock deaerators, etc., while at the same time showing what we consider to be "stock-treating parts" of such machines, such as tapered plugs for the jordan, beater rolls with steel bars, etc. We think there is no doubt but that Congress intended the Skardal and like independent units for processing pulp to be "machines" under paragraph 372, while the *elements* of such machines which treat the stock are "stock-treating parts." Any other construction of the statute does violence to the *facts* of the pulp-making industry.

As further evidence of the correctness of what we deem to be the statutory meaning, we note that including the Skardal with the devices recited *eo nomine* in paragraph 356, i.e., roll bars and bed plates, is inconsistent with the spirit of the *ejusdem generis* principle. The dissenting judge states, and we agree:

[3] The book was introduced by appellant—and not objected to by the Government—for the purpose of quoting therefrom in briefs of the parties as an authoritative source of information about the paper-making industry. Our use of the text is solely as background material; apparently both parties consider it to be so.

Moreover, if the principle of *ejusdem generis* applies to the function of the articles *eo nomine* designated in said paragraph 356, I believe it likewise applies to the *character* of the enumerated articles. It is my view, based upon the information supplied to Congress when it first considered this provision, that such of the knives, cutters, blades, roll bars, and bedplates specified in the paragraph as serve as instruments for machinery, are in the nature of parts of machines in the conventional sense, not in and of themselves machines which are complete units.

This view is further fortified for me by the words which Congress employed to provide for other stock treating parts. The language reads "parts for," not "parts of," which is a most uncommon statutory expression for the designation of parts. More often than otherwise, whenever Congress has made provision for parts, it has used the preposition "of" either alone, as in the case of the many provisions for "parts *of* any of the foregoing," or in conjunction with the adverb "there," as in "parts *thereof.*" Most particularly, paragraph 372 of the Tariff Act of 1930, which is the comprehensive provision for machines and machinery of many varieties, reads "parts * * * of any of the foregoing."

While the expression "parts of machinery" might well connote any appurtenance necessary to promote the overall purpose of an aggregate of means and appliances, and thus refer to complete units * * * [cases cited], the expression "parts for machinery" is suggestive of a more limited meaning having reference to elements which do not function separately but are constituents of an entity.

As for the Skardal parts, viz., shafts, spacers, bearing housing caps, lockwashers, locknuts, and spiders not in the stator-rotor sets, we consider these to be "parts not specially provided for" under paragraph 372. In our opinion they are not "stock-treating parts" as we view "stock-treatment," infra, in No. 5129.

It remains only to mention four cases cited and discussed by the majority, viz., *California Fruit Wrapping Mills (Inc.)* v. *United States* (1932), 19 CCPA 381, T.D. 45513; *E. Dillingham, Inc.* v. *United States* (1930), 58 Treas. Dec. 329, T.D. 44281; *E. Dillingham, Inc.* v. *United States* (1933), 63 Treas. Dec. 1510, Abstract 24027; *American Voith Contact Co., Inc.* v. *United States* (1933), 64 Treas. Dec. 1070, Abstract 25958. In the *California Fruit* case, this court simply held that wire screens for the Fourdrinier *paper* making machines are not "stock-treating parts" within paragraph 356. Any dicta regarding the principle of *ejusdem generis* with respect to paragraph 356 is clarified herein above. We consider the decision in the first *Dillingham* case to be entirely consistent with our opinion herein. Insofar as the second *Dillingham* and the *American Voith* cases may appear to be inconsistent herewith, we note, as did the majority opinion, that they were decided before the provision "machines for making paper or paper pulp" was incorporated into paragraph 372.

The judgment in No. 5128 (C.D. 2362) is *reversed.*

*No. 5129—Screen Plate for Bird Jonsson Screen*

The majority considered both the Bird Jonsson Screen *and* the screen plates therefor to be "other stock-treating parts" within paragraph 356, stating:

> In the companion case [Skardal], we discussed at some length, unnecessary to repeat here, our opinion that in the phrase "pulp and paper machinery" the word "machinery" was used in a broad sense to include not only machines but their parts and accessories which were used in the stock treating process.
>
> The metal plates in controversy are parts of the Jonsson screen, which latter performs an important function in the conversion of pulpwood into woodpulp. Said screen is depicted on the flow diagram, exhibit 1 in the companion case, situated between the digester and the Skardal preparator. Obviously, therefore, the Jonsson screen is a stock treating part of pulp machinery and since the metal plates are parts of the screen they become parts of stock treating parts for pulp machinery under the doctrine that a part of a part is a part of the whole. *United States* v. *American Express Co.*, 29 C.C.P.A. (Customs) 87, 93, C.A.D. 175.

The dissenting judge considered the Bird Jonsson Screen a "machine for making paper or paper pulp," but did not consider the screen plate therefor a "stock-treating" part within paragraph 356. As to the latter point, both the majority and the dissenting opinions discuss the *California Fruit* case, supra, in determining whether screen plates are "stock-treating parts." This court stated in the *California* case:

> As heretofore indicated, we think that the words "stock-treating parts," as used in said paragraph 356, refer to the treatment of paper and pulp material before it has reached the stage of going upon the wire [Fourdrinier] screens here involved, and refer to parts which perform, *or assist in performing*, the functions of cutting, grinding, beating, or similar functions. [Emphasis ours.]

The majority considered the screen plate's function of separating wanted fibers from unwanted burrs, dirt, knots, etc., to be within this court's definition of *assisting* the performance of cutting, grinding, beating, or similar functions, as stated in *California Fruit*. The dissenting judge felt otherwise, stating:

> While it is a step in the process of making paper pulp, the separation of coarse particles from fine does not effect a reduction in the size or shape of either the material which passes through the screen or the material which is discharged from it. Accordingly, it is not, in my opinion, a process similar to cutting, grinding, or beating, all of which necessarily affect the size or the shape or the character of the substance so treated.

In our view, the Jonsson Bird Screen is a "* * * [machine] for making paper or paper pulp" for reasons expressed with respect to the Skardal in our accompanying opinion in No. 5128. We further consider the screen plates to be "stock-treating parts" and properly classified under paragraph 356.

The testimony of appellant's witnesses and the record are not persuasive that the function performed by the screen plate is not "stock-treatment." Appellant's witnesses, to be sure, said *separating* different size chunks is not *treating;* that no size reduction of *fibers* results from screen plate separation; that treating connotes some change in *fiber* characteristics.[6]  The dissenting judge stated separation of "coarse particles" is not "treatment" since no *reduction* of *size or shape* of "material" is effected.   Both the witnesses and the dissenting judge thus predicate the definition of "treatment" upon what happens to *pulp* and *cellulose fiber*.   But the statute says *"stock"* treatment (emphasis ours), not "fiber" or "pulp" treatment.   We must therefore define "stock."

Although "stock" is not directly defined in the record, the stipulation states that in using the Bird Jonsson Screen "stock *flows* into one end of the screen."   (Emphasis ours.)   Also the phrase "stock *containing* the good, clean fibers" (emphasis ours) is used as well as "It merely screens *from the stock* all material other than usable fibers" (emphasis ours).   Thus "stock" apparently means the admixture of water, coarse pulp and impurities of all kinds when present.   In handling "stock" we consider *separation* of parts thereof to be as much "treatment" of stock within the statutory meaning as is any direct mechanical or chemical action on the coarse pulp, which is but one part of the stock.   We see no reason why the *pulp* constituent per se must be acted upon to have *"stock"* treatment (our emphasis).

Therefore we conclude that screen plates for Bird Jonsson Screens are "other stock-treating parts for pulp and paper machinery" within paragraph 356; the judgment in No. 5129 (C.D. 2363) is *affirmed.*

---

[6] Testimony of G. L. Nelson, development director of Bird Machine Co., appellant (all emphasis ours) :

Q.  I would like to direct your attention to the word "treating." When we are talking about the process of manufacturing paper pulp what is treating; are you familiar with the word "treating"?  A.  Yes.  The way that we use the word "treating" is that it's a mechanical action using power to reduce the size and shape of a slurry rather than as a separating effect.  The word "treatment" connotes mechanical power in that it works on the *individual pieces* and reduces them in size.

Q.  For example, grinding, is that treatment?  A.  Grinding.

Q.  Or grading?  A.  Grading.

Q.  But separating one size from another I gather you say is not treating?  A. We do not consider that treating because there has been *no change in the individual fibers.*

Q.  Specifically does the Jonsson Screen have any effect whatsoever on the material going through it other than to separate the sizes?  A.  That's all it can be determined as.

Although the witness states that "treating" involves reduction in "size and shape of a *slurry"* we note that he must mean *"coarse pulp constituents, in the slurry"* since a "slurry" has no "size and shape" of its own.